Ronnie Riggs v. Workers' Compensation Commission, 5100540. Counselor, please. May it please the Court, Mr. Pelton. My name is Trenton Galletti. I'm representing Mr. Riggs, the appellant in this case. Basically, the issue here is whether Arbitrator Teague's finding that Mr. Riggs' back injury was not causally related to the work injury and the Commission's subsequent adoption of her decision is against the manifest word of evidence. The facts of this case are real simple. Let me point out something in my brief real quick that I found out last night. When I cite to my client's testimony in the record, I have it cited to the transcript and not the appellate record. Sorry, I apologize to the Court. Mr. Riggs drives a dump truck, or did at the time of the accident. He was hauling a load of rock to a site to dump it. While in the process of dumping the rock, the trailer came unhitched from the rig, causing the rig to flip onto the passenger side, which caused Mr. Riggs to twist within the cab and slam his left side into the passenger door. Mr. Riggs testifies that he immediately felt left shoulder pain at that time and that he went to the emergency room for treatment. He then followed with his primary care physician, Dr. Davis, a week after, and that's noted in the respondent's brief. The second line of that treatment record indicates that Ron Riggs still has low back pain. That was eight days after the accident. And then Riggs is referred to Dr. Machette for rotator cuff injury. And he also complains on 9-10 of low back pain being a consistent problem since the motor vehicle accident. Pursuant to those complaints, Dr. Machette ordered a lumbar spine MRI, and Riggs came back on the 17th of September for the MRI. How do you explain this? As I understand it, Dr. Machette did not note any lumbar, thoracic, or lower extremity complaints at all for like six months after the accident. How is that explainable? Well, Mr. Riggs notes in his testimony that when Mr. Keltner asked him, so your testimony would be that your back hip problems manifested within two months of the accident, he states that he wouldn't say that, that they were totally manifested, that because the shoulder pain was the greatest pain of the accident, that was what he was concentrating on at the time, the very bad shoulder pain. Now, he also testifies that during the course of his physical therapy that Dr. Machette ordered, and after the shoulder repair, that he did complain consistently of back pain during that time. To who? To Machette? To Machette and to the physical therapist. And so for six months, Machette just forgot to put it in his records? I cannot explain that, Judge. Well, I mean, you can see why that would be a concern. Yes, the gap is a concern, but consistently through Mr. Riggs' treatment, I mean, every doctor he goes to that he tells that he has low back pain, I mean, Machette treated him for that low back pain initially with the MRI of September, which was only seven weeks after the truck flipped over. And once Dr. Machette finished his treatment for Mr. Riggs' shoulder problem, he then referred Riggs to Dr. Lin, who was a pain management, for his ongoing hip and back pain. What did Dr. Robeson include? What did he testify to? Actually, Your Honor, there wasn't testimony given, there was just reports entered. And what did Robeson's reports say? Robeson basically says that, well, first of all, Robeson's, in his physical examination under the musculoskeletal area, he confirms that Mr. Riggs does in fact suffer from back pain and hip pain, but he blames it on Mr. Riggs' hip arthritis. He blames it on it. Robeson concludes that it's fair to say that his back and hip problems are the result of a degenerative process and not the accident, correct? That's correct, Your Honor. And why couldn't the commission have believed Robeson over Ali? Well, the reason, the stated reason that Robeson is believed over Ali is because of Robeson's review of MRI film. I believe that's the main foundation of the decision. And, you know, it's stated that Ali, he didn't look at all the films, he didn't review all the treatment records, therefore Robeson's worth credible. Well, there was an EMG taken on August 11th of 2008 along with a thoracic spine MRI that's never mentioned in Robeson's report at all, despite him saying in the report that he reviewed all the records. So Robeson didn't review all the records. And if Riggs' hip, arthritic hip condition were to the point that they were so bad that Robeson recommends that he had bilateral hip replacement, you would expect to see consistent hip and back pain complaints in the primary care physician's records that were entered into evidence as well and no such pain or complaints exist prior to the accident. All right. If you are suggesting that we should believe or give more credence to Ali's opinions than Robeson's, are you not doing, you were in the call when we started the theme this morning, are you not in essence asking us to substitute our judgment for that of the commission? How do you get around that argument? I boil it down to a very simple fact pattern. Ron Riggs testified that immediately prior to his semi-truck flipping over, he wasn't in any back pain. And then afterward, we have 14 months of diagnostic testing and treatment with regard to his back. I cited the Price case in here, which is a Fourth District case. The petitioner Price gets injured. He had some records indicating pre-existing back pain and was eventually denied by the arbitrary compensation because of a pre-existing nature. And the commission actually overturned that decision and basically held that I don't even, the petitioner doesn't even need to submit medical records in order to find a case compensable. They can just establish. Well, that may be true. And I think that we, the law is clear that that can be the case. If you document no problems and an accidental injury and then problems after that, I think that the law is clear there. But here, in essence, you have conflicting medical testimony, conflicting medical records, and yet you're saying we should disregard the manifest weight of the evidence standard and go with the experts on the claimant's side. I'm not saying that. I'm saying that I have, as the petitioner has, the manifest weight of the evidence on his side. They have one six-page report that was bought 18 months after the accident occurred. I mean, they send one IME, Dr. Rothrock, for his shoulder in August 4 of 2008. And even Dr. Rothrock states in his report that Riggs has ongoing musculoskeletal problems and pain in his back and hip. So they cut him off then, but they don't have any expert testimony or reporting with regard to his back. So in December, after I noticed at the hearing, they've got to go get a report showing Mr. Riggs' back pain is unrelated to his semi-truck rollover. So in my opinion, and what I think the evidence does show, is that I have a lengthy history of treatment and complaints of back pain, along with testimony that wasn't impeached. It was impeached with records, but not with testimony, that established that Mr. Riggs suffered some sort of back injury as a result of the accident. And all they have, this is their evidence. This is it. This is my evidence right here. This is what happened after the accident. He can point to no treatment records. There's the bruising on the petitioner's thoracic spine. The thoracic portion of his back. I have objective, I have evidence that he was hurt. Not a paid-for report that he wasn't hurt when faced with a 19B hearing. And so for those reasons, I'm going to request that this honorable court reverse the finding of the commission in this case, and remand the case back so that Mr. Riggs can get his back treated and that the nature and extent of his back injury can be fully heard. Thank you. Counsel, please. Thank you. May it please the court. Counsel, my name is Greg Keltner. I'm here on behalf of Corte Luke John. I think it's clear from the arguments that have been presented here in the last 15 minutes that what counsel wants you to do is precisely what Justice Hudson identified, and that is to take a look at what the commission did and substitute your judgment for the commission's. In perfect candor to you, I will admit that different people could perhaps look at the evidence here and come to different conclusions. But the reality of it is that there is a lot of conflicting medical evidence, and the commission did precisely what its mandate is to do, and that is to resolve issues involving conflicting evidence. And if you look at what Dr. Robson said, and if you look at what Dr. Ali said, and you look at some of the background behind what they said, it's understandable why the commission, and it's certainly reasonable that the commission found Robson more persuasive than Ali. Robson's a board-certified orthopedic surgeon. He actually looked at the films. I know counsel wants to tell you that that's an insignificant factor, but it's very significant. Robson looked at the lumbar MRI from September 17th of 2007, he said, and the lumbar MRI from that date included some images from the T12L1 level, which is one of the levels where Dr. Ali says later on there's a herniated disc. Robson says there's no herniation. He says it's degenerative disc disease, and that's perfectly consistent with the reading of the radiologist who looked at the September 17th, 2007 film. Dr. Robson also took a look at the August 11th, 2008 thoracic MRI, and it's basically the same conclusion. It's degenerative changes. He says there's a, characterizes them as mild in nature with no significant cord compression. Dr. Robson looked at the petitioner's medical records, and I think if you look at Robson's report, you will get the impression, as did the commission, that he looked at a lot of the records. He listed the records that he looked at in there. If you contrast that with what Dr. Ali said, we know that he's a doctor of neurology because it's on his letterhead, but we don't know what his other credentials are. We don't know what his other background is. We do know from Dr. Robson because his CV is in evidence. We'd have Dr. Ali indicating, I'll put it this way, he doesn't indicate it, but one can certainly draw a reasonable inference from the evidence. He didn't look at any of the films. He does rely on the interpretation of the radiologist who looked at the thoracic MRI, but that's about as far as it goes. We don't know if he even looked at any of the petitioner's medical records, and that's certainly a relevant consideration for reasons I'll point out in just a moment. So just looking at it from the perspective of which physician had the better view of what had gone on before they got involved, it's certainly reasonable to conclude that Robson did. Justice Hudson noted that there was this six-month period where there were no complaints. In fact, that's exactly right, and that's one of the basis on which the commission adopted the arbitrator's finding, that essentially there was a period from September 27th of 2007, which was right on the heels of the lumbar MRI, until March 20th, I believe it was, of 2008, when Mr. Riggs reported he was having some hip problems. If you look a little further in what Dr. Neshed's records indicate, it's pretty clear from the films that he's got bone-on-bone changes, he's got significant degenerative changes in those hips. And one thing that the commission didn't mention in their decision, but I certainly think is relevant in terms of this whole business of this gap of medical treatment, is he went to physical therapy 63 times between December of 2007 and June of 2008. And on one occasion, on June 2nd, 2008, is there a complaint of hip pain. There's no mention whatsoever of back pain. And I think that's relevant because one of the arguments that counsel's making to you is that, well, you should believe what the petitioner says and you should go with that and you should throw Dr. Robson's opinion out the window because of that. I think just the opposite. If a person goes to therapy 63 times for a left shoulder problem and there is another problem that develops in the course of that therapy, particularly involving another body part that's not involved, it's inconceivable that the therapist would not write that down. And the same thing is true of Dr. Neshed during that 6-month period between September of 2007 and March of 2008 when, as counsel told you, he claims that a petitioner was complaining of back problems, hip problems during that period of time. It's real clear from looking at Dr. Neshed's records that he is very detail-oriented in terms of writing things down. And it's inconceivable, again, that an orthopedic surgeon who's treating somebody for a shoulder problem would not have noted the fact that there were some other problems developing before March of 2008. So I guess to kind of wrap this thing up in a nice, neat package from my perspective, yeah, there's conflicting medical evidence here. This Court has said many, many times that the Commission's decisions with regard, Commission's findings with regard to factual matters are entitled to substantial deference. And this is one of those occasions the Commission did exactly what it was supposed to do and you should affirm its decision in its entirety. Thank you. Thank you, counsel. Rebuttal. To address the point Mr. Keltner made on Dr. Robson finding degenerative changes, even if there were degenerative changes and not a disc herniation, the degenerative changes in his back weren't symptomatic before the accident. So what we have is an accident and then we have a symptomatic back. Dr. Burke of Anderson Hospital, the radiologist who interpreted the MRI films, was held in high regard by Dr. Ali according to his letter in his exhibit. And therefore Dr. Ali, based upon his physical examinations of the petitioner and the history given and the impression of the MRI as read by Dr. Burke, linked up the objective findings on the MRI with Mr. Riggs' subjective complaints of back pain. Dr. Robson in his report opines that bilateral hip replacement would put Mr. Riggs back to be able to drive a semi and that it would alleviate his symptoms. Riggs testified that on January 31, 2008, he in fact had a right hip replacement. And that was prior to the hearing. It was about two and a half to three months prior to the hearing. And Riggs testified that his back pain had gotten no better. One would think that if half of Mr. Riggs' problems were fixed or treated, that at least he would have some sort of symptom alleviation. The physical therapy records that Mr. Keltner talks about that have no mention of back pain in them, they're boilerplate, computer generated, put a dot here, there's no writing on them or anything. They're just automatic computer generations. Mr. Riggs was in physical therapy for a shoulder, a rotator cuff tear. And that's what they were treating him for there. The work hardening and functional capacity evaluation done after that, there's many, many instances of complaints of back pain. And finally, I believe this decision needs to be scrutinized and the petitioner be given every benefit of the doubt with the serious nature of his injuries, at least partly in fact because of the ethical investigation that arbitrator Teague is currently under for her handling of workers' compensation cases. And again, I'd ask that you reverse the commission's decision in this case. Thank you very much.